CAPE COD STEAMSHIP COMPANY & others *vs.* SELECTMEN OF PROVINCETOWN & another.

Suffolk. May 12, 1936. — July 1, 1936.

Present: RUGG, C.J., CROSBY, DONAHUE, LUMMUS, & QUA, JJ.

*Municipal Corporations*, Wharf, Public landing, Lease of municipal property. *Wharf. Provincetown. Mandamus.*

Selectmen of the town of Provincetown, though acting in conformity to a vote of the town, had no power to let to a steamship company the exclusive right to use and control property, bought by the town under St. 1928, c. 253, for a wharf and public landing and still required for public use.

Mandamus lay, on petition of citizens of the town of Provincetown and of a corporation injured by an unlawful letting by the selectmen of the exclusive right to use and control the wharf and public landing of the town, to require the selectmen, notwithstanding such lease, to maintain the property as a wharf and public landing property and to make, subject to the provisions of St. 1928, c. 253, reasonable rules and regulations so that the public might have reasonable access to the property on equal terms.

PETITION for a writ of mandamus, filed in the Supreme Judicial Court for the county of Suffolk on March 18, 1936.

The petition was heard by *Crosby*, J., on the pleadings and an agreed statement of facts, and was reported to the full court for determination.

*T. H. Walsh*, (*J. J. Krohn* with him,) for the petitioners.
*J. A. Vitelli*, for the respondents.

QUA, J. Material facts disclosed by the agreed statement of facts are these: For the past thirty years, during the summer season, the corporate petitioner has operated

passenger steamships between Boston and Provincetown, and for the past twenty-five years it has berthed its steamships at "Town Wharf," now so called, in Provincetown. There is at that town no other wharf with sufficient depth of water to dock these vessels. The individual petitioners are citizens and taxpayers in Provincetown. The individual respondents are the selectmen of that town. By St. 1928, c. 253, the town was authorized to acquire the wharf, then owned or leased by certain railroads, and to "maintain and operate said property as a wharf and public landing." The statute further provided that the powers thereby conferred should "be exercised by the selectmen, who shall also have power to make rules and regulations governing the use of said wharf and public landing, subject, however, to such rules and regulations as the town may from time to time fix by vote." The statute was to take effect upon acceptance by the town. At a town meeting held May 21, 1928, the town accepted the statute and appropriated the sum of $5,000 to acquire the wharf "as a Public Landing agreeably to Chapter 253 of the Acts of 1928." Thereafter the railroads deeded the property to the town. It is agreed that the statute of 1928 was the authority under which this wharf was acquired by the town.

At a town meeting held February 10, 1936, the town voted to lease to the respondent Bay State Steamship Company for a term of five years "an exclusive berthing privilege at the Town Pier for passenger service." In pursuance of this vote the town, acting through two of the respondent selectmen, has delivered to the Bay State Steamship Company, in consideration of an annual rental of $3,000, a purported lease for a term of five years of "the exclusive right and privilege of occupying the end and that side of the Town Pier which has the greatest depth of water for the purpose of docking and otherwise carrying on the lessee's business in connection with its steamships plying to and from Provincetown." The lease contains a clause that "the lessee shall have the exclusive rights to occupy the demised premises and no boat or boats carry-

ing passengers for hire shall be permitted to use any part of said Town Pier without the written permission of the lessee."

This lease would not only exclude the petitioner Cape Cod Steamship Company from "Town Wharf," but would also prevent it altogether from docking its steamships at Provincetown, unless it incurred the expense of preparing another suitable wharf. The object of this petition is to secure to the public, including the petitioners, the right to use "Town Wharf" as a public landing.

In this Commonwealth public landings have been recognized both by immemorial usage and by law from the earliest existence of the State. *Commonwealth* v. *Manning*, 3 Dane Abr. 19. *Kean* v. *Stetson*, 5 Pick. 492, 495. *Bennett* v. *Clemence*, 6 Allen, 10, 18. The analogy between them and public ways is close and obvious. Their laying out and discontinuance are now commonly governed by G. L. (Ter. Ed.) c. 88, §§ 14–19, where the procedure is assimilated to that provided for the laying out and discontinuance of public ways. The agreed facts make it plain that in this instance "Town Wharf" was acquired by the town under the special statute of 1928, and that it was thereby devoted to public use as a landing. *Attorney General* v. *Tarr*, 148 Mass. 309. *D. N. Kelley & Son, Inc.* v. *Selectmen of Fairhaven*, 294 Mass. 570. The town could no more grant the exclusive use of any part of it needed by the public for the purposes of a landing to particular persons or corporations in derogation of the equal rights of the rest of the public than it could grant to individuals the exclusive right to travel over portions of its town ways. The attempt here made to grant to a single steamship company the exclusive right to carry passengers for hire to and from "Town Wharf" is comparable to an attempt to grant to a single taxicab proprietor the exclusive right to carry passengers on town ways. The purported lease is of no effect as against the paramount rights of the public. *Commonwealth* v. *Morrison*, 197 Mass. 199. *Salisbury Land & Improvement Co.* v. *Commonwealth*, 215 Mass. 371, 377, 378, *Wright* v. *Walcott*, 238 Mass. 432. *Opinion of the*

*Justices,* 237 Mass. 598, 609.   *Juneau Ferry & Navigation Co.* v. *Morgan,* 236 Fed. 204.   *Matthews* v. *Alexandria,* 68 Mo. 115.   *Reighard* v. *Flinn,* 189 Penn. St. 355.   *Chicago, Rock Island & Pacific Railway* v. *People,* 222 Ill. 427. *Roberts* v. *Louisville,* 92 Ky. 95.   *People* v. *Doxsee,* 136 App. Div. (N. Y.) 400.   *Williams* v. *Gallatin,* 229 N. Y. 248.   *Meriwether* v. *Garrett,* 102 U. S. 472, 513.   See *Weld* v. *Gas & Electric Light Commissioners,* 197 Mass. 556.

This case is to be distinguished from cases where a town has leased real estate which, as the result of circumstances, was not required for any present public use.   See *Goodman* v. *Provincetown,* 283 Mass. 457.   *D. N. Kelley & Son, Inc.* v. *Selectmen of Fairhaven,* 294 Mass. 570.   Compare *French* v. *Quincy,* 3 Allen, 9; *Davis* v. *Rockport,* 213 Mass. 279, 283; *Wright* v. *Walcott,* 238 Mass. 432.   See *Salisbury Land & Improvement Co.* v. *Commonwealth,* 215 Mass. 371, 378. Here it is apparent that the same public need to satisfy which the wharf was purchased still continues and that there is a present demand for public use of the portion leased.   Nor are we required to consider how far the selectmen might go in granting privileges to do business upon the wharf of such kinds as might conduce to the convenience or comfort of the public without interfering with the use of the wharf as such.

The respondents have not argued that the lease was made effective by the power granted to selectmen by G. L. (Ter. Ed.) c. 88, § 14, to lease structures upon common landing places.   That provision by its terms applies only to structures erected by the town upon common landing places laid out or altered pursuant to said § 14.   It does not apply to a wharf erected by others and purchased by the town under authority of a special act which contains no corresponding provision.   Nor can authority to grant this lease be found in the power to lease "a public building" contained in G. L. (Ter. Ed.) c. 40, § 3.   That section does not confer new powers to grant away exclusive privileges in property devoted to strictly public uses and still needed for such uses.   See *Commonwealth* v. *Wilder,* 127 Mass. 1, 3.   See in connection with both of these statutes the

principles fully discussed in *Salisbury Land & Improvement Co.* v. *Commonwealth*, 215 Mass. 371.

This petition is properly brought by private parties who are legitimately concerned in the performance by public officers of a public duty. The case is unlike *Warner* v. *Mayor of Taunton*, 253 Mass. 116, and other similar cases where it has been held that the injury to private individuals caused by an obstruction in a highway is merged in the resulting public nuisance, so that action can be taken only by or in behalf of the Commonwealth. Here, so far as appears, there has been no obstruction or nuisance. Under the special act of 1928 it was the duty of the selectmen in behalf of the public to "maintain and operate" the wharf as a "public landing" and to make any reasonable and necessary rules governing its use as such, subject to the provisions of the act. The selectmen, acting no doubt in obedience to the supposed command of the vote of the town on February 10, 1936, have in large measure abandoned that duty and have executed a purported lease inconsistent with further performance of their duty under the statute. This brings the case within the authority of *Brewster* v. *Sherman*, 195 Mass. 222, *Cox* v. *Segee*, 206 Mass. 380, *Kelley* v. *Peabody Board of Health*, 248 Mass. 165, 169, *Bancroft* v. *Building Commissioner of Boston*, 257 Mass. 82, 84, *Brooks* v. *Secretary of the Commonwealth*, 257 Mass. 91, and *D. N. Kelley & Son, Inc.* v. *Selectmen of Fairhaven*, 294 Mass. 570. It sufficiently appears that a demand upon the respondents would have been unavailing. *Attorney General* v. *Boston*, 123 Mass. 460, 477. *Nolan* v. *Boston Firemen's Relief Fund*, 236 Mass. 420, 422.

A peremptory writ of mandamus is to issue commanding the respondent selectmen in their official capacities as such, notwithstanding the purported lease to Bay State Steamship Company, to maintain and operate "Town Wharf" as a wharf and public landing in accordance with c. 253 of the Acts of 1928, and to make, subject to the provisions of said act, any and all reasonable rules and regulations which may be necessary to govern such use so that all persons and corporations, including the petitioners,

may have reasonable access to said wharf on equal terms according to the nature and extent of the public use which they may reasonably desire to make thereof, and commanding all respondents to allow and to refrain from interfering with the reasonable and proper use by the petitioners in common with the rest of the public of said wharf and public landing.

*So ordered.*