JOANNA C. FEDELE[1] *vs.* SCHOOL COMMITTEE OF
WESTWOOD & another.[2]

Norfolk. December 3, 1991. - March 2, 1992.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & GREANEY, JJ.

*School and School Committee*, Transportation of students. *Education*,
Transportation. *Statute*, Construction. *Practice, Civil*, Appeal. *Consti-
tutional Law*, Equal protection of laws, Sex discrimination, Freedom of
religion. *Civil Rights*, Availability of remedy, Attorney's fees.

Statute 1983, c. 663, § 1, requiring that transportation be provided to pri-
vate school pupils who are attending approved private schools "within
the boundaries of the school district" in the fulfilment of compulsory
attendance requirements, did not require a town to provide transporta-
tion for a student who was attending a private sectarian school outside
of the school district that contained the public school the student was
entitled to attend; however, where no cross appeal from a judgment or-
dering the town to transport the pupil as far as the public high school
that the student was entitled to attend was taken by the town's school
committee, the judgment was allowed to stand. [113-115]
A female student who was denied public-supported transportation to a pri-
vate sectarian school outside of the school district that contained the
public school she was entitled to attend was not denied equal protection
of the laws because of her gender, where the distinction made in G. L.
c. 76, § 1, between students who attend approved private schools within
the boundaries of their local public school districts and those who at-
tend such schools located elsewhere was clearly gender neutral on its
face, and where there was no appearance that that statute, as inter-
preted and implemented by the local school district, was intended to
discriminate against female students [115-116]; furthermore, there was
no basis to conclude that she was discriminated against because of her
religion [116]; nor was there anything to indicate any violation of her
rights under 42 U.S.C. § 1988 (1988), the Federal Civil Rights Act
[117].

---

[1]By her mother, Paula C. Fedele.
[2]The superintendent of schools of Westwood.

A plaintiff in a civil action who was not a "prevailing party" against the defendants was not entitled to an assessment of attorney's fees under 42 U.S.C. § 1988 (1988). [117-118].


CIVIL ACTION commenced in the Superior Court Department on May 4, 1989.

The case was heard by *Elizabeth Bowen Donovan*, J., on a motion for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*George F. Gormley* for the plaintiff.

*Regina Williams Tate* for the defendants.

GREANEY, J. The plaintiff, Joanna C. Fedele, a minor, brought this action through her mother against the defendants, the school committee of Westwood and the town's superintendent of schools. The plaintiff sought: (1) an order in the nature of mandamus directing the defendants to provide transportation so she could continue her education at the private sectarian school of her choosing; (2) damages and attorney's fees pursuant to 42 U.S.C. §§ 1983 and 1988 (1988), and (3) damages pursuant to G. L. c. 12, § 11I (1990 ed.), the State Civil Rights Act. The defendants moved for summary judgment pursuant to Mass. R. Civ. P. 56 (b), 365 Mass. 824 (1974). A judge in the Superior Court entered summary judgment for the plaintiff, see Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974), on the mandamus claim and ordered that "the defendants transport [the plaintiff] to and from the public school she is entitled to attend within . . . Westwood on a daily basis via the public school transportation system." The judge also granted summary judgment for the defendants on the plaintiffs' Federal and State civil rights claims. The plaintiff appealed, and we transferred the case to this court on our own motion. We conclude that the defendants acted lawfully in denying any public school transportation to the plaintiff, but because the defendants have not taken a cross appeal, we allow the judgment on the transportation issue to stand. We also conclude that the defendants

should prevail on the plaintiff's Federal civil rights claims.[3] Accordingly, we affirm the judgment.

The undisputed facts are as follows. The plaintiff lives with her parents in Westwood and attends Ursuline Academy, a private sectarian school for girls in the adjoining town of Dedham. At the time the suit was filed, the plaintiff was in the eighth grade; she is now in the eleventh grade. Ursuline Academy is an approved private school within the meaning of G. L. c. ·76, § 1 (1990 ed.), but it is not within the Westwood school district.

In 1982, the committee implemented a policy of providing public school bus transportation to and from its public and approved private schools located within the boundaries of Westwood to students who are residents of Westwood and who live one and one-half miles or more from the public school they are eligible to attend. Under this policy, Westwood provides transportation to students of its public schools and Xaverian High School, an all-boys private sectarian high school located in Westwood.

The plaintiff resides more than one and one-half miles from Westwood High School, the public school she is entitled to attend, and approximately four miles from Ursuline Academy. During the 1987-1988, and through most of the 1988-1989 school years, she traveled on a public school bus provided by the Westwood school committee to Westwood High School where she would transfer to another public school bus transporting students to Xaverian High School (Xaverian), an approved sectarian school for boys in Westwood. She then used privately provided transportation to travel from Xaverian to Ursuline Academy. On April 28, 1989, the plaintiff was informed, on behalf of the defendants, that she could no longer use a public school bus as a means of getting to Ursuline Academy. When the plaintiff made contact with the superintendent of schools, he reaffirmed the decision that she

---

[3]The plaintiff does not contest in her brief the grant of summary judgment for the defendants on her claims pursuant to G. L. c. 12, § 11I, the State Civil Rights Act.

could not ride the public school bus and would not thereafter have access to the Westwood public school transportation system. The plaintiff's lawsuit followed.

1. The statute relevant to the transportation claim is G. L. c. 76, § 1. In *Attorney Gen.* v. *School Comm. of Essex*, 387 Mass. 326, 338 (1982), this court held that, if public school students are transported beyond their district, "any private school student must be transported to any approved private school that is the same distance as or closer than the public school he is entitled to attend."

In 1983, after the *Essex* decision, the Legislature amended G. L. c. 76, § 1, by enacting St. 1983, c. 663, § 1. The amended statute reads, in pertinent part, as follows:

> "[P]upils who attend approved private schools of elementary and high school grades shall be entitled to the same rights and privileges as to transportation to and from school as are provided by law for pupils of public schools and shall not be denied such transportation because their attendance is in a school which is conducted under religious auspices or includes religious instruction in its curriculum. Each school committee shall provide transportation for any pupil *attending such an approved private school within the boundaries of the school district*, provided, however, that the distance between said pupil's residence and the private school said pupil attends exceeds two miles or such other minimum distance as may be established by the school committee for transportation of public school students. Any school committee which is required by law to transport any pupil attending an approved private school beyond the boundaries of the school district shall not be required to do so further than the distance from the residence of such pupil to the public school he is entitled to attend." (Emphasis added.)

The plaintiff argues that this statute was intended by the Legislature to provide her with the same transportation bene-

fits that are provided to public school students which, she maintains, require that she be transported to Xaverian High School, the private sectarian all-boys high school in Westwood. From Xaverian, she would obtain her own transportation to Ursuline Academy. The plaintiff arrives at this interpretation by focusing on the language in the first sentence of the statute set forth above, and on statements in our decisions, that G. L. c. 76, § 1, is meant to afford private school students the same transportation benefits as public school students. See, e.g., *School Comm. of Lexington* v. *Commissioner of Educ.*, 397 Mass. 593, 595 (1986); *Attorney Gen.* v. *School Comm. of Essex, supra* at 337; *Quinn* v. *School Comm. of Plymouth*, 332 Mass. 410, 412 (1955). The plaintiff concludes, therefore, that the judge erred in not interpreting the statute to require that the defendants transport her on the public school bus system to Xaverian High School.

The short answer to the plaintiff's argument is that the general language contained in the first sentence of G. L. c. 76, § 1, and corresponding statements in our decisions concerning the statute's purpose, are qualified by the more specific language in the second sentence of the statute which unambiguously provides that a school committee's obligation to transport private school students extends only to the transportation of students who are attending an approved private school "within the boundaries of the school district." As it applies to this case, the statute does not require transportation for a student who is attending a private school that is outside of the school district (Westwood) which contains the public school the student is entitled to attend. The plaintiff would, in effect, have us excise this language from its statutory context and, thereafter, interpret the statute according to her perceived objectives and notions of equity. This we cannot do. "It is elementary that the meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain, . . . the sole function of the courts is to enforce it according to its terms." *James J. Welch & Co.* v. *Deputy Comm'r of Capital Planning & Operations*, 387 Mass. 662, 666 (1982), quoting

*Caminetti* v. *United States*, 242 U.S. 470, 485 (1917). The defendants acted lawfully in denying the plaintiff transportation on public school buses because she attends a private school outside of Westwood.[4] The defendants, however, took no cross appeal from the judgment ordering them to transport the plaintiff as far as Westwood High School. In the absence of a cross appeal, we shall allow the judgment to stand as it is. See *Fortin* v. *Ox-Bow Marina, Inc.*, 408 Mass. 310, 323 (1990), and cases cited.

2. It follows from the discussion above that the defendants' policy of transporting only private school students who attend schools that are located within Westwood is in accordance with G. L. c. 76, § 1, and impairs no Federal constitutional or other legal right of the plaintiff.[5] That Xaverian High School is located in Westwood and Ursuline Academy in Dedham, outside of the Westwood school district, is happenstance for which the school committee of Westwood is not responsible. If Ursuline Academy were located in Westwood, the plaintiff would be entitled to transportation to that school. If Xaverian High School were located outside of Westwood, its students would not be entitled to transportation by the defendants. The plaintiff has neither been denied equal protection of the laws nor been made the victim of intentional discrimination based on her gender or religion.

"When a statute gender-neutral on its face is challenged on the ground that its effects upon women are disproportionately adverse, a twofold inquiry is . . . appropriate. The first question is whether the statutory classification is indeed neutral in the sense that it is not gender based. If the classification itself, covert or overt, is not based upon gender, the second question is whether the adverse effect reflects invidious

---

[4]The plaintiff does not argue that the third sentence of G. L. c. 76, § 1, set forth above, concerning transportation for students attending a private school outside of the district, has any application to this case. Accordingly, we decide the case, as did the judge below, on the language of the first two sentences of the statute.

[5]The plaintiff develops no separate argument under the provisions of the Massachusetts Constitution.

discrimination. See *Arlington Heights* v. *Metropolitan Hous. Dev. Corp.*, [429 U.S. 252 (1977)]. In this second inquiry, impact provides an 'important starting point,' 429 U.S. at 256, but purposeful discrimination is 'the condition that offends the Constitution.' *Swann* v. *Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 16 [(1971)]." *Personnel Adm'r of Mass.* v. *Feeney*, 442 U.S. 256, 274 (1979). In this case, the distinction made in the statute between students who attend approved private schools located within the boundaries of their local public school districts and those who attend such schools located elsewhere is clearly gender neutral on its face. Indeed, if the locations of the Ursuline Academy and Xaverian High School were reversed, the statute would operate in favor of girls, to the disadvantage of boys. Thus, under the test discussed in *Feeney*, *supra*, it must appear, for the plaintiff to prevail, that the statute, as interpreted and implemented by the defendants, is *intended* to discriminate against girls. The summary judgment record contains no such appearance. Thus, there is no basis for a conclusion that the plaintiff has been denied equal protection of the laws because of her gender.

Similarly, there is no basis to conclude that the plaintiff has been discriminated against because of her religion. As has been discussed above, the statute is facially neutral; its classifications are based solely on the location of the school in question. While the plaintiff possesses the constitutional right freely to exercise her chosen religion, she does not possess a right to compel the school committee to subsidize her choice. "The free exercise inquiry asks whether government has placed a substantial burden on the observation of a central religious belief or practice . . . ." *Hernandez* v. *Commissioner of Internal Revenue*, 490 U.S. 680, 699 (1989). Nothing in the defendants' transportation policy burdens the plaintiff's freedom to believe in her chosen religion or her freedom to act on that belief. See *Attorney Gen.* v. *Bailey*, 386 Mass. 367, 374, cert. denied sub nom. *Bailey* v. *Bellotti*, 459 U.S. 970 (1982). Thus, the plaintiff's right to maintain her religion has not been hampered.

There is also nothing to indicate any violation of the Federal Civil Rights Act. Neither G. L. c. 76, § 1, nor constitutional requirements, entitled the plaintiff to any public transportation. In order to establish a violation of the Federal Civil Rights Act, it must appear that the defendants have deprived the plaintiff of "[a] right[ ], privilege[ ], or immunit[y] secured by the Constitution and laws." 42 U.S.C. § 1983. Because the plaintiff had no right to transportation, the failure to provide her with such transportation cannot amount to a violation of her civil rights.

Finally, the plaintiff is not "the prevailing party" for purposes of an assessment of attorney's fees against the defendants.[6] "A typical formulation [of the term 'prevailing party'] is that 'plaintiffs may be considered "prevailing parties" for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.' *Nadeau* v. *Helgemoe,* 581 F.2d 275, 278-279 ([1st Cir.] 1978)." *Hensley* v. *Eckerhart,* 461 U.S. 424, 433 (1983). Here, the plaintiff did not succeed in obtaining any measure of the relief she sought: public transportation for a part of her journey to the Ursuline Academy. Rather, she gained only transportation to the public school she was entitled to attend, something her suit did not even seek. Additionally, the plaintiff would have lost even this technical victory if not for the defendants' failure to cross-appeal. In these circumstances, we find that the plaintiff has failed to cross the " 'statutory threshold' of prevailing party status," *Texas State Teachers Ass'n* v. *Garland Indep. Sch. Dist.,* 489 U.S. 782, 789 (1989), and is therefore not entitled to attorney's fees. See also *Cronin* v. *Tewksbury,* 405 Mass. 74, 76 (1989). The defendants were therefore entitled to

---

[6]Title 42 U.S.C. § 1988 (1988), provides, in pertinent part, that "[i]n any action or proceeding to enforce a provision [of enumerated sections of the civil rights laws], the court in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

summary judgment on all respects of the plaintiff's Federal civil rights claims.[7]

*Judgment affirmed.*

---

[7]The judge granted summary judgment for the defendants on this claim on the basis that they were entitled to qualified immunity, a ground the defendants did not raise below. We need not consider the issue of qualified immunity because the judgment in the defendants' favor on this claim can clearly be upheld on the basis discussed in the text of this opinion.